STATE OF NORTH CAROLINA v. CURTIS EDWARD ETHERIDGE

No. 141A86

(Filed 3 February 1987)

**1. Criminal Law § 82.2— child abuse—no physician-patient privilege**

The trial court in a prosecution for rape, taking indecent liberties with a child, and incest properly admitted the testimony of a public health nurse that defendant had disclosed to her sexual contact with his children while seeking treatment for a sexually transmitted disease after he had been charged. The physician-patient privilege created by N.C.G.S. 8-53 is not available in cases involving child abuse; moreover, these exceptions to the physician-patient privilege apply without regard to whether the medical information was obtained before or after the accused was officially charged with a crime. N.C.G.S. 8-53.1, N.C.G.S. 7A-551.

**2. Criminal Law § 55.1— venereal disease report—disclosed during voir dire rather than in camera—no error**

There was no error in a prosecution for rape, taking indecent liberties with a child, and incest from the admission of defendant's disclosure to a public health nurse of sexual contact with his children while seeking treatment for a sexually transmitted disease where the information related by the nurse was not disclosed *in camera*, but at a *voir dire* in open court. Defendant was fully aware of the delicate contents of the nurse's report and his failure to apprise the judge of any objection to proceeding with the *voir dire* in open court constituted a waiver of the objection. N.C.G.S. 130A-163.

**3. Criminal Law § 75.13— statements to public health nurse—Miranda warnings not required**

In a prosecution for sexual offenses against his children, the lack of *Miranda* warnings and defendant's Fifth Amendment privilege against self-incrimination did not require the exclusion of statements concerning sexual contact with his children made to a public health nurse while seeking treatment for a sexually transmitted disease. Defendant raised no constitutional claim at trial; there was no indication that the nurse acted as an agent of the State, the

police, or the prosecution; defendant himself requested that he be taken to the health department and the accommodation of his request was not related to the criminal investigation; defendant was allowed a private interview with the nurse; defendant was asked only routine questions from a standard form used for patients complaining of sexually transmitted diseases; defendant was not under any compulsion to answer the questions; and there was no evidence of subtle coercion in the exchange.

**4. Rape and Allied Offenses § 5— second degree sexual offense—constructive force—general fear rationale**

The holding of *State v. Alston*, 310 N.C. 399, regarding the absence of force in a sexual offense, is limited to factually similar situations, and the application of the *Alston* "general fear" rationale to sexual activity between a parent and minor children in *State v. Lester*, 70 N.C. App. 757, *aff'd per curiam*, 313 N.C. 595, is expressly overruled.

**5. Rape and Allied Offenses § 5— second degree sexual offense—evidence of force —sufficient**

In a prosecution for a second degree sexual offense committed by defendant against his son, the State presented sufficient evidence from which the jury could reasonably infer that defendant used his position of power to force his son's participation in sexual acts where defendant had begun abusing his son when the boy was eight years old, so that the child was conditioned to succumb to defendant's advances, and the incidents of abuse all occurred while the boy lived as an unemancipated minor in defendant's household, subject to defendant's parental authority and threats of disciplinary action. Although defendant in the incident charged said no more than "do it anyway" when his son initially refused to disrobe, the child's knowledge of his father's power may alone induce fear sufficient to overcome his will to resist and the State presented sufficient evidence from which the jury could reasonably infer that defendant used his position of power to force his son's participation in sexual acts.

**6. Rape and Allied Offenses § 19— indecent liberties with a child—evidence sufficient**

The State presented sufficient evidence of five counts of taking indecent liberties with a child where each count coincided with an episode of intercourse, and in each instance defendant ordered his victim to lie down, then exposed his penis before proceeding with intercourse. Penetration of the victim, while perhaps defendant's ultimate goal, was not the only event in the sequence which could be found to have been performed for his gratification. N.C.G.S. § 14-202.1(a)(1).

**7. Constitutional Law § 34; Criminal Law § 26.5— statutory rape—indecent liberties with a child—incest—same transaction—no double jeopardy**

Neither convictions of statutory rape, taking indecent liberties with a child, and incest arising from the same transaction, nor convictions of crime against nature, taking indecent liberties with a child, and second degree sexual offense arising from the same transaction with a different child, violated de-

fendant's rights against double jeopardy because they were all separate and distinct crimes, none of which was a lesser-included offense of the other.

Justice WEBB dissenting.

APPEAL by defendant from judgments of *Small, J.*, filed at the 2 December 1985 session of Superior Court, PERQUIMANS County. Heard in the Supreme Court 10 December 1986.

*Lacy H. Thornburg, Attorney General, by James Peeler Smith, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for the defendant.*

MARTIN, Justice.

On charges involving his daughter,[1] defendant was convicted of four counts of rape in the first degree, four counts of taking indecent liberties with a child, and four counts of incest. On additional charges involving his son, defendant was convicted of single counts of crime against nature, taking indecent liberties with a child, and sexual offense in the second degree. Defendant appealed from consolidated judgments imposing two life sentences for the crimes against his daughter and a twelve-year sentence for the crimes against his son, all sentences to run consecutively. For the reasons set forth below, we deem defendant's assignments of error to be uniformly meritless and hold that he received a fair trial, free of prejudicial error.

Briefly summarized, the state's evidence tended to show that defendant began engaging in sexual activity with his daughter and son when they were six and eight years old, respectively. The most recent incidents, from which the criminal charges at issue arose, consisted of the following acts: On 10 April 1985 defendant drove his daughter, then aged twelve, to an isolated area in Perquimans County known as Bear Swamp. Defendant stopped his truck about halfway into the swamp and told the child to open the door of the truck, remove her clothes, and lie down on the seat. She complied with these demands. Defendant then unzipped his

1. In keeping with the practice established by this Court in recent cases, the names of the two minor victims have been deleted throughout this opinion to spare them further embarrassment.

pants and had vaginal intercourse with her. Afterward defendant warned her not to tell anyone admonishing that "we'll both get in trouble." Other episodes of intercourse, perpetrated in an essentially identical manner, occurred in Bear Swamp on 21 December 1984 and 5 January 1985 and in the child's room at home on 15 February 1985.

The state's evidence further tended to show that on 28 April 1985 defendant was at home alone with his son, then aged thirteen. Defendant told the boy to go upstairs and, having followed him to his room, directed him to remove his clothes. At first the child refused. However, when told to "[d]o it anyway," he obeyed defendant's order. Defendant then took off his own pants and had anal intercourse with his son. He threatened to hurt the boy if anyone found out what had transpired between them.

A friend to whom the boy later confided details of the incident informed the Department of Social Services (DSS), and defendant's children were removed from the home. This friend and Debbie Spence of the DSS testified as to what the children had told them about defendant's abuse. These statements were consistent with the children's testimony at trial. Public health nurse Louise Ervin provided additional corroboration, testifying that she had interviewed defendant at Perquimans Health Department on 21 May 1985 because he was concerned about symptoms of a sexually transmittable disease. Defendant stated to Ms. Ervin that he had had sexual contact with his son and daughter.

Defendant did not testify on his own behalf but presented evidence tending to show that his daughter vaguely remembered telling her mother when she was six years old that defendant had touched her breasts. Otherwise she had never complained of sexual abuse to friends or family members until DSS workers began asking questions about her father in May of 1985. Defendant's son learned about sexual abuse from a film at school and knew defendant would get into trouble if accused of molesting his children. He admitted that defendant had previously threatened to send him to training school because of disciplinary problems at home. Both children had gone over their testimony with the prosecutor, a police officer, and Debbie Spence a number of times prior to trial. Medical examinations of the children on 4 May 1985

revealed no bruising or tearing of the tissues or other physical evidence of sexual abuse.

[1] Defendant presents four assignments of error for our consideration. He first attacks the competency of nurse Louise Ervin's testimony insofar as it disclosed defendant's admission of sexual contact with his children. Ms. Ervin testified as follows:

> Q. Mrs. Ervin, at the time that you—after you asked the defendant what, if anything, you could do for him, did you later in your discussion with him ask him the question who he had had sexual contacts with?
>
> MR. HALSTEAD: Objection. Leading.
>
> THE COURT: Overruled.
>
> Q. You may answer the question.
>
> A. Yes, I did.
>
> Q. And when you asked him the question, who he had had sexual contacts with, what did he tell you?
>
> A. He said he had had contacts with his wife, his son, his daughter, and a girl in Edenton.
>
> Q. His wife, his son, his daughter, and a girl in Edenton?
>
> A. Uh-huh.
>
> Q. And whenever you—when he told you that, did you ask him or specify to him again, or did you ask the question of him again or specify what you meant to him?
>
> A. Yes, I did.
>
> Q. And in what way did you do that?
>
> A. I told Mr. Etheridge that this was sexual contact we were talking about.
>
> Q. All right. And whenever you did that, did he make some—make an additional response and say something else to you?
>
> A. He repeated what he had said.
>
> Q. And what exactly did he repeat?

A. He said that he had had contact with his wife, his son, his daughter, and a girl in Edenton.

At trial defendant sought to invoke the protections of the physician-patient privilege under N.C.G.S. § 8-53 to bar the admission of this testimony. That statute provides, in part:

§ 8-53.    Communications between physician and patient.

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1.

Defendant correctly notes that this privilege applies to communications with a nurse acting under the direction of a physician. *State v. Efird*, 309 N.C. 802, 309 S.E. 2d 228 (1983). Defendant insists that the prosecutor's statement during voir dire that "a licensed public health nurse working under the supervision of the Health Department would certainly come under the physician/patient privilege from my understanding of it," is sufficient to bring Ms. Ervin's testimony within the purview of the statute. However, we find it wholly unnecessary to resolve the issue of whether Ms. Ervin in this instance acted under the direction of a physician. Any privilege of confidentiality to which defendant might possibly have been entitled by section 8-53 was nullified by N.C.G.S. §§ 8-53.1 and 7A-551 under the facts of this case.

Section 8-53.1 qualifies section 8-53 as follows:

§ 8-53.1.    Physician-patient privilege waived in child abuse.

Notwithstanding the provisions of G.S. 8-53, the physician-patient privilege shall not be ground for excluding evidence regarding the abuse or neglect of a child under the age of 16 years or regarding an illness of or injuries to such child or the cause thereof in any judicial proceeding related to a report pursuant to the North Carolina Juvenile Code, Subchapter XI of Chapter 7A of the General Statutes of North Carolina.

Section 8-53.1 is to be read in pari materia with section 7A-551. *Efird*, 309 N.C. at 805, 309 S.E. 2d at 230. Section 7A-551 provides:

§ 7A-551.   Privileges not grounds for excluding evidence.

Neither the physician-patient privilege nor the husband-wife privilege shall be grounds for excluding evidence of abuse or neglect in any judicial proceeding (civil, criminal, or juvenile) in which a juvenile's abuse or neglect is in issue nor in any judicial proceeding resulting from a report submitted under this Article, both as said privileges relate to the competency of the witness and to the exclusion of confidential communications.

We agree with this Court's succinct assessment of the implications of N.C.G.S. §§ 8-53.1 and 7A-551 as stated in *Efird*: "In essence, the physician-patient privilege, created by N.C. Gen. Stat. § 8-53, is not available in cases involving child abuse." 309 N.C. at 805, 309 S.E. 2d at 230. Defendant attempts to distinguish his situation from that in *Efird* in order to avoid application of this general rule. In *Efird*, the perpetrator had been treated for a sexually transmitted disease some months before he was actually implicated in the rape of his young stepdaughter. Here, on the other hand, defendant only sought treatment *after* he had been charged with sexual crimes and taken into custody. Defendant urges, based upon this discrepancy in timing, that his case should not be controlled by the provisions of sections 8-53.1 and 7A-551. Defendant premises this argument upon the notion that one of the primary objectives of the section 8-53 privilege is to encourage free disclosure of medical information which can curb the spread of communicable disease. To remove the privilege after an accused has already been charged, defendant claims, undermines this policy and endangers public health by deterring accused persons with sexually transmitted diseases from naming their sexual contacts. Defendant contends that such an effect was not contemplated by the legislature when it enacted sections 8-53.1 and 7A-551.

We find nothing in our examination of the statutes to support defendant's view. The language of each is all-inclusive. Section 8-53.1 allows evidence of abuse "in *any* judicial proceeding *related to a report* pursuant to the North Carolina Juvenile Code," while

section 7A-551 allows such evidence "in *any* judicial proceeding
. . . in which a juvenile's *abuse or neglect is in issue.*" (Emphases
added.) Clearly this case involves abuse of juveniles and arose
from a report to the DSS, which fits the description of "a report
pursuant to the North Carolina Juvenile Code." *See* N.C.G.S.
§ 7A-543 (1986). We believe the legislature, in balancing the need
for confidential medical treatment against the need to protect
child victims, opted to provide the broadest possible exceptions to
the physician-patient privilege. The statutes plainly facilitate the
prosecution of child abusers, without regard to whether the medi-
cal information was obtained before or after the accused was offi-
cially charged with a crime.

[2] Defendant argues alternatively that Ms. Ervin's testimony
should have been barred under N.C.G.S. § 130A-163, which pro-
vides:

> § 130A-163.   Confidentiality of venereal disease information
>                and records.
>
>     Except as necessary to enforce the provisions of this
> Part and its rules concerning the control and treatment of
> venereal disease, all personally identifiable information or
> records held by the Department, local health departments or
> licensed physicians relating to known or suspected cases of
> venereal disease shall be confidential and shall not be public
> records. However, all suspected cases of abused juveniles
> shall be reported in accordance with Article 44 of Chapter 7A
> of the General Statutes and information or records held by
> the Department, local health departments or licensed physi-
> cians shall be admissible in any judicial proceeding in which a
> juvenile's abuse or neglect is in issue or in any judicial pro-
> ceeding resulting from a report submitted under Article 44 of
> Chapter 7A of the General Statutes if the material is dis-
> closed in camera.

Specifically, defendant complains that the information related by
Ms. Ervin was not admissible because it was not disclosed in
camera. Instead, the trial judge removed the jury and conducted
a voir dire in open court without excluding the spectators then
present.

    We do not find it necessary to determine whether the trial
judge's action complied with the statute because the record

discloses that although the state had provided defendant with a copy of Ms. Ervin's written health department report, he never requested a hearing in camera. We hold that defendant's failure to apprise the judge of any objection to proceeding with the voir dire in open court constituted a waiver of such objection. The general rule is that objections to or requests for particular procedures must be timely, allowing the trial judge an opportunity to take action thereon. *E.g., State v. Payne*, 312 N.C. 647, 325 S.E. 2d 205 (1985) (absent timely request for voir dire on admissibility of testimony, the trial court need not conduct one); *State v. Cox*, 303 N.C. 75, 277 S.E. 2d 376 (1981) (objection must be made to offered evidence as soon as the party objecting has the opportunity to discover its objectionable nature); *State v. Hopper*, 292 N.C. 580, 234 S.E. 2d 580 (1977) (an objection comes too late when it is lodged only after the jury has heard the entire contents of the objectionable testimony); *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied*, 423 U.S. 1091 (1976) (requests for further jury instructions are timely only if tendered before the jury retires; codified by N.C.R. App. P. 10(b)(2) ).

Defendant was fully aware of the delicate contents of Ms. Ervin's report and should have allowed the court an opportunity to exclude spectators before the testimony began. As the trial judge noted in the record:

> The Court had not anticipated that testimony concerning information in the records, which may have been confidentially obtained by the Health Department from the defendant, were to be the subject matter to be elicited from the witness until the witness Ervin had revealed this information.

> At the time the witness revealed the confidential venereal disease information solicited by the witness Ervin from the defendant, neither the State nor the defendant had requested an in-camera hearing, and this information was revealed to all the persons then in the courtroom.

Defendant must not be permitted to take advantage of his own failure to request the in camera hearing, for, as this Court has long recognized,

> it would be detrimental to public justice to allow a prisoner to remain silent, awaiting the chances of an acquittal, and, if

disappointed in the result, to fall back upon a reserved exception, the substance of which is kept from the knowledge of the Court, when, if known, it could have been provided against.

*State v. Gee*, 92 N.C. 756, 763 (1885).

[3] Finally, defendant contends that Ms. Ervin's testimony should have been excluded as obtained in violation of his fifth amendment privilege against self-incrimination because he was not given Miranda warnings prior to his interview at the health department. We note at the outset that defendant raised no constitutional claim at trial and therefore has waived this issue on appeal. *State v. Creason*, 313 N.C. 122, 326 S.E. 2d 24 (1985); *Stone v. Lynch*, 312 N.C. 739, 325 S.E. 2d 230 (1985); *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982). Even if we were to consider the merits of this argument, however, defendant would not prevail.

The Miranda ruling applies only to custodial interrogations. *State v. Sykes*, 285 N.C. 202, 203 S.E. 2d 849 (1974). Custodial interrogation refers to questioning initiated by law enforcement officers after the accused has been deprived of his freedom. *State v. Thomas*, 284 N.C. 212, 200 S.E. 2d 3 (1973). Because of this limitation on Miranda's reach, statements made to private individuals unconnected with law enforcement are admissible so long as they were made freely and voluntarily. *See State v. Spence*, 271 N.C. 23, 155 S.E. 2d 802 (1967), *remanded*, 392 U.S. 649, 20 L.Ed. 2d 1350, *rev'd on other grounds*, 274 N.C. 536, 164 S.E. 2d 593 (1968); *In re Simmons*, 24 N.C. App. 28, 210 S.E. 2d 84 (1974).

Our appellate court decisions are replete with examples of individuals who, though occupying some official capacity or ostensible position of authority, have been ruled unconnected to law enforcement for Miranda purposes. *See State v. Barnett*, 307 N.C. 608, 300 S.E. 2d 340 (1983) (magistrate not government agent where no evidence that police requested that he speak to defendant); *State v. Conard*, 55 N.C. App. 63, 284 S.E. 2d 557 (1981), *disc. rev. denied*, 305 N.C. 303, 290 S.E. 2d 704 (1982) (magistrate not a representative of the police); *State v. Perry*, 50 N.C. App. 540, 274 S.E. 2d 261, *disc. rev. denied*, 302 N.C. 632, 280 S.E. 2d 446 (1981) (bail bondsman not a law enforcement officer in spite of ability to make arrests); *In re Weaver*, 43 N.C. App. 222, 258 S.E. 2d 492 (1979) (DSS worker not acting on behalf of law enforcement of-

ficers); *State v. Johnson*, 29 N.C. App. 141, 223 S.E. 2d 400, *disc. rev. denied*, 290 N.C. 310, 225 S.E. 2d 831 (1976) (radio dispatcher employed by police department not acting as a law enforcement officer). Particularly illuminating are those cases holding that medical personnel and hospital workers did not function as agents of the police where the accused made incriminating statements on his own initiative, out of the presence of police, and in response to questions not supplied by police. *See, e.g., State v. Alston*, 295 N.C. 629, 247 S.E. 2d 898 (1978) (statement to hospital desk clerk admissible); *State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975) (statements to nurse, doctor, and medical attendant admissible).

Here, as in those cases, we find no indication that Ms. Ervin acted as an agent of the state, the police, or the prosecution. Defendant himself requested that he be taken to the health department, and the accommodation of this request was not related to the criminal investigation. Although transported to the health department in the custody of a police officer, defendant was allowed a private interview with Ms. Ervin out of the officer's presence. He was asked only routine questions from a standard form used for patients complaining of sexually transmitted diseases. Defendant was not under any compulsion to answer the questions and the record reveals no evidence of subtle coercion in the exchange. Defendant's statements were freely and voluntarily given.

In sum, we hold that Ms. Ervin's testimony was not barred by the physician-patient privilege under N.C.G.S. § 8-53, the requirement of confidentiality of venereal disease records under N.C.G.S. § 130A-163, or the privilege against self-incrimination. For all the reasons stated above, we hold that the testimony was properly admitted.

[4] Defendant next contends that the trial court erroneously denied his motion to dismiss the charge of sexual offense in the second degree. He argues that the state failed to present the evidence of force necessary to sustain his conviction of the offense under N.C.G.S. § 14-27.5. In overruling this assignment of error, we take this opportunity to elaborate upon our recent limitation of the holding in *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984), and to disavow its misbegotten offspring. *State v. Lester*,

70 N.C. App. 757, 321 S.E. 2d 166 (1984), *aff'd per curiam*, 313 N.C. 595, 330 S.E. 2d 205 (1985).

For the act of anal intercourse with his son, defendant was convicted under section 14-27.5, which provides in pertinent part:

§ 14-27.5.  Second-degree sexual offense.

(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:

(1) By force and against the will of the other person;
 . . .

The phrase "by force and against the will of the other person" means the same as it did at common law when it was used to describe an element of rape. *State v. Locklear*, 304 N.C. 534, 284 S.E. 2d 500 (1981). The requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion. *State v. Hines*, 286 N.C. 377, 211 S.E. 2d 201 (1975). Constructive force is demonstrated by proof of threats or other actions by the defendant which compel the victim's submission to sexual acts. *See State v. Burns*, 287 N.C. 102, 214 S.E. 2d 56, *cert. denied*, 423 U.S. 933, 46 L.Ed. 2d 264 (1975) (threat of serious bodily injury sufficient to constitute constructive force). Threats need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat. *State v. Barnette*, 304 N.C. 447, 284 S.E. 2d 298 (1981).

Defendant argues that both actual and constructive force were conspicuously absent from the incident of anal intercourse as described by his son. He bases this contention on the reasoning in *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470, and *State v. Lester*, 70 N.C. App. 757, 321 S.E. 2d 166, *aff'd per curiam*, 313 N.C. 595, 330 S.E. 2d 205. We hold that *Lester* carried *Alston* far beyond its intended scope and that defendant's reliance on the two decisions is inappropriate under the facts of this case.

The facts giving rise to *Alston* were unusual ones. The prosecutrix, one Ms. Brown, had engaged in a consensual, though somewhat turbulent, sexual relationship with the defendant for six months prior to the alleged rape. The relationship involved some

violence by the defendant, who struck Ms. Brown when she re-
fused him money, and some passivity by Ms. Brown, who on sev-
eral occasions remained entirely motionless while the defendant
undressed her and had intercourse with her. On the day of the al-
leged rape, the defendant waited outside the school which Ms.
Brown attended. He grabbed her arm and told her she was going
with him. As they walked away, he threatened to "fix" her face.
The two then walked around the neighborhood and discussed
their relationship, eventually arriving at the home of the defend-
ant's friend. The defendant began to undress Ms. Brown and told
her to lie down on the bed. She complied, whereupon he pushed
her legs apart and had intercourse with her. She cried but at-
tempted no physical resistance.

This Court, recognizing that Ms. Brown's prior consensual re-
lationship with the defendant rendered any inquiry on the issue
of force more difficult, determined that the acts complained of
were committed against Ms. Brown's will but were not committed
forcibly. We noted that the defendant's grabbing of Ms. Brown
and his threat to "fix" her face, "although they may have induced
fear, appeared to have been unrelated to the act of sexual inter-
course between Brown and the defendant." We thereupon con-
cluded that "absent evidence that the defendant used force or
threats to overcome the will of the victim *to resist the sexual in-
tercourse alleged to have been rape,* such general fear was not
sufficient to show that the defendant used the force required to
support a conviction of rape." 310 N.C. at 408-09, 312 S.E. 2d at
476.

In *Lester,* the Court of Appeals applied the *Alston* "general
fear" rationale to an intrafamilial sexual assault. The defendant in
that case was convicted of two counts of raping his fifteen-year-
old daughter. He had engaged in sexual intercourse with the child
since she was eleven years old and had threatened to kill her if
anyone learned of his actions. The defendant had also beaten the
child's mother in her presence and had pointed a gun at his chil-
dren. Before each of the two incidents charged, the defendant told
his daughter to remove her clothes. Both times she initially re-
fused but capitulated upon the second demand because her father
seemed to be getting angry. The defendant then had intercourse
with her. He neither used physical force nor threatened its use
expressly, and the child made no attempt to resist. The Court of

Appeals held that, in light of *Alston*, "the victim's fear of defendant, however justified by his previous conduct" was insufficiently related to the intercourse to show that it had been forcible. This Court summarily affirmed.

We now disavow *Lester*'s misapplication of the *Alston* "general fear" rationale to a case of intrafamilial sexual abuse. As we noted in *State v. Strickland*, 318 N.C. 653, 351 S.E. 2d 281 (1987), the "general fear" theory should be applied only to those situations which are factually similar to *Alston*. Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose. We therefore expressly overrule *State v. Lester*, 70 N.C. App. 757, 321 S.E. 2d 166, *aff'd per curiam*, 313 N.C. 595, 330 S.E. 2d 205.

[5] Having overruled *Lester* and limited *Alston* to its peculiar facts, we return to our consideration of whether the evidence of force presented in the instant case was sufficient to withstand defendant's motion to dismiss. Upon a motion to dismiss in a criminal prosecution, the trial court must view the evidence in the light most favorable to the state, giving the state the benefit of every reasonable inference that might be drawn therefrom. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The trial judge must decide if there is substantial evidence of each element of the offense charged. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980).

We hold that constructive force could be reasonably inferred from the circumstances surrounding the parent-child relationship in this case. Defendant began abusing his son when the boy was only eight years old. Like his sister, the child was conditioned to succumb to defendant's illicit advances at an age when he could not yet fully comprehend the implications of defendant's conduct. Not until he saw a film at school did the boy realize that defendant's behavior was considered improper and abusive. The incidents of abuse all occurred while the boy lived as an uneman-

cipated minor in defendant's household, subject to defendant's parental authority and threats of disciplinary action.

In the incident charged, defendant said no more than "[d]o it anyway" when his son initially refused to disrobe. It is nonetheless reasonable to conclude that these words carried a great deal more menace than is apparent on the surface, for a father's threat to impose punishment upon a child who refuses to obey his commands need not be stated in so many words. The child's knowledge of his father's power may alone induce fear sufficient to overcome his will to resist, and the child may acquiesce rather than risk his father's wrath. As one commentator observes, force can be understood in some contexts as the power one need not use. Estrich, *Rape*, 95 Yale L.J. 1087, 1115 (1986).

In such cases the parent wields authority as another assailant might wield a weapon. The authority itself intimidates; the implicit threat to exercise it coerces. Coercion, as stated above, is a form of constructive force. For this reason, we hold that the state presented sufficient evidence from which the jury could reasonably infer that defendant used his position of power to force his son's participation in sexual acts.

**[6]** Defendant next contends that the trial court erred in denying his motion to dismiss all charges of taking indecent liberties with his children. He claims that the state presented insufficient evidence to prove a violation of N.C.G.S. § 14-202.1, which defines the crime as follows:

§ 14-202.1.   Taking indecent liberties with children.

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

Defendant was convicted on five counts of indecent liberties un-der section 14-202.1(a)(1), each count coinciding with an episode of intercourse described by one of the children. In support of the charges, the state presented evidence that in each instance de-fendant ordered his victim to undress and lie down, then exposed his penis before proceeding with the act of intercourse.

We note first that it is not necessary that defendant touch his victim to commit an immoral, improper, or indecent liberty within the meaning of the statute. *State v. Turman*, 52 N.C. App. 376, 278 S.E. 2d 574 (1981). Thus it has been held that the photo-graphing of a naked child in a sexually suggestive pose is an ac-tivity contemplated by the statute, *State v. Kistle*, 59 N.C. App. 724, 297 S.E. 2d 626 (1982), *disc. rev. denied*, 307 N.C. 471, 298 S.E. 2d 694 (1983), as is masturbation within a child's sight, *State v. Turman*, 52 N.C. App. 376, 278 S.E. 2d 574, and a defendant's act of exposing his penis and placing his hand upon it while in close proximity to a child, *State v. Hicks*, 79 N.C. App. 599, 339 S.E. 2d 806 (1986). These decisions demonstrate that a variety of acts may be considered indecent and may be performed to pro-vide sexual gratification to the actor. Indeed, the legislature enacted section 14-202.1 to encompass more types of deviant behavior, giving children broader protection than available under other statutes proscribing sexual acts. *State v. Harward*, 264 N.C. 746, 142 S.E. 2d 691 (1965). We find that defendant's actions fall well within the broad category of indecent liberties.

However, defendant argues further that his conduct did not demonstrate any intent to arouse or gratify his sexual desire apart from his overall intent to commit rape or crime against na-ture. We disagree.

A sexual encounter encompasses a number of independent but related actions, any and all of which may be undertaken for the purpose of arousal. Here the penetration of the victim, while perhaps defendant's ultimate goal, was not the only event in the sequence which could be found to have been performed for his gratification. While we do not care to speculate upon all possible motivations involved in human sexual behavior, we hold that the jury could properly infer that defendant ordered his children to undress, demanded that they assume submissive, sexually sug-gestive positions, and brandished his penis before them in their

naked and helpless condition for the purpose of arousing or gratifying his sexual desire.

[7]  In his final assignment of error, defendant contends that he received multiple punishments for the same acts, in violation of the double jeopardy clauses of the state and federal constitutions. For each episode of intercourse with his daughter, defendant was convicted of statutory rape, taking indecent liberties with a child, and incest. The episode of anal intercourse with his son yielded convictions of crime against nature, taking indecent liberties with a child, and sexual offense in the second degree.

Both the fifth amendment to the United States Constitution and article I, section 19 of the North Carolina Constitution prohibit multiple punishments for the *same* offense absent clear legislative intent to the contrary. *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535 (1983). That the offenses were consolidated for judgment does not put to rest double jeopardy issues, because the separate convictions may still give rise to adverse collateral consequences. *Ball v. United States*, 470 U.S. 856, 84 L.Ed. 2d 740 (1985); *see also State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569 (1972).

Where, as here, a single criminal transaction constitutes a violation of more than one criminal statute, the test to determine if the elements of the offenses are the same is whether each statute requires proof of a fact which the others do not. *Blockburger v. United States*, 284 U.S. 299, 76 L.Ed. 306 (1932); *State v. Perry*, 305 N.C. 225, 287 S.E. 2d 810 (1982). By definition, all the essential elements of a lesser included offense are also elements of the greater offense. Invariably then, a lesser included offense requires no proof beyond that required for the greater offense, and the two crimes are considered identical for double jeopardy purposes. *Brown v. Ohio*, 432 U.S. 161, 53 L.Ed. 2d 187 (1977); *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980). If neither crime constitutes a lesser included offense of the other, the convictions will fail to support a plea of double jeopardy. *See State v. Walden*, 306 N.C. 466, 293 S.E. 2d 780 (1982).

Defendant correctly concedes that our courts have already largely determined that the crimes charged in this case are not identical. *See State v. Warren*, 309 N.C. 224, 306 S.E. 2d 446 (1983) (crime against nature is not a lesser included offense of sex-

ual offense in the second degree); *State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982) (indecent liberties is not a lesser included offense of statutory rape); *State v. Copeland*, 11 N.C. App. 516, 181 S.E. 2d 722, *cert. denied*, 279 N.C. 512, 183 S.E. 2d 688 (1971) (indecent liberties is not a lesser included offense of crime against nature). Clearly incest, which requires proof of a familial relationship, is not a lesser included offense of statutory rape; nor is indecent liberties, which requires proof of a sexual purpose, a lesser included offense of incest or sexual offense in the second degree. We hold that the convictions of statutory rape, taking indecent liberties with a child, and incest, all arising out of the same transaction, did not violate defendant's rights against double jeopardy. The three are legally separate and distinct crimes, none of which is a lesser included offense of another. By the same token, we hold that crime against nature, taking indecent liberties with a child, and sexual offense in the second degree are legally separate and distinct crimes and that convictions for all three crimes arising out of the same transaction did not place defendant in double jeopardy.

No error.

Justice WEBB dissenting.

I dissent from that portion of the majority opinion which holds that *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984), does not require that we hold there was insufficient evidence to find the defendant guilty of second degree sexual offense.

In *Alston* the evidence showed that the defendant had abused the prosecuting witness on past occasions and had, on the occasion in question, forced her to accompany him by twisting her arm. He also threatened to "fix her face." This Court said the evidence showed that the victim had a general fear of the defendant and that the sexual intercourse was against her will. This Court nevertheless said "absent evidence that the defendant used force or threats to overcome the will of the victim *to resist the sexual intercourse alleged to have been rape*, such general fear was not sufficient to show that the defendant used the force required to support a conviction of rape." *Id.* at 409, 312 S.E. 2d at 476. (Emphasis in original.) I do not see how we could have a clearer holding that, although a victim may be justifiably afraid of

a person and may testify that she only submitted because of a fear of what he might do if she did not submit, there still must be evidence of force or of a specific threat if she does not submit in order for the jury to find there was force. I do not believe this is consistent with reality but it is the way I believe *Alston* has to be read.

In this case the majority distinguishes *Alston* on the ground that the sex act in this case is between a father and his minor son. I agree that a father stands in a position of authority towards his son and that the son could have a legitimate fear of not doing the father's will. The difficulty for me with the majority's distinction is that the victim in *Alston* had an equal fear and yet this Court held there had to be a specific threat. That is the reason I believe the majority's distinction between this case and *Alston* is one without a difference.

For the reasons stated in this dissent I believe it is error to overrule *State v. Lester*, 70 N.C. App. 757, 321 S.E. 2d 166 (1984), *aff'd per curiam*, 313 N.C. 595, 330 S.E. 2d 205 (1985), without overruling *Alston*.