IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-989

Filed 18 June 2024

Scotland County, No. 17CRS52669

STATE OF NORTH CAROLINA

v.

TERRELL AARON SADDLER AKA AARON TERRELL SADDLER, Defendant.

Appeal by defendant from judgment entered 11 July 2022 by Judge Stephen Futrell in Scotland County Superior Court. Heard in the Court of Appeals 3 April 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Zachary K. Dunn, for the State.*
>
> *Marilyn G. Ozer for defendant-appellant.*

DILLON, Chief Judge.

Defendant Terrell Aaron Saddler was convicted by a jury of second-degree murder for the fatal shooting of Brandon Morris outside a home in Laurinburg. Defendant appeals from the judgment entered consistent with the jury's verdict.

Several months later, before our Court resolved Defendant's appeal, Defendant filed a motion for appropriate relief ("MAR"), based on Defendant's claim that the State withheld certain evidence from Defendant which would have been helpful to his defense, evidence which Defendant did not learn about until after his trial. Our

Court entered an order remanding the matter to the trial court to consider Defendant's MAR. After a hearing on the matter, the trial court denied Defendant's MAR. Defendant also appeals from that order. We now consider Defendant's arguments concerning his conviction and from the trial court's denial of his MAR.

## I. Factual Background

On 28 October 2017, Brandon Morris attended a party at a Laurinburg home. While in the driveway, Mr. Morris was fatally wounded by gunshots fired from inside a Chevrolet Impala parked on the street. Eyewitness testimony identified Defendant as being present in the Chevrolet, which fled the scene following the shooting.

Following an investigation, Defendant was arrested for Mr. Morris's death and charged with first-degree murder. Defendant was found guilty by a jury of second-degree murder and sentenced to a term of imprisonment. Defendant appeals.

## II. Analysis

Defendant makes two arguments on appeal, which we address in turn.

### A. Jail Telephone Calls

Defendant raises several issues concerning the trial court's admission of two jailhouse phone calls between Defendant and an unidentified female occurring on 30 October 2017, two days after the shooting. An automated message warned that the calls were "subject to recording and monitoring[.]" During those phone calls, Defendant and the female discussed the neighborhood gossip surrounding the shooting, and the female indicated that she had heard from others that Defendant

was the shooter.  Defendant did not offer any denial to the gossip; rather, Defendant stated that he was being robbed, and Defendant instructed the female caller what to say if asked about his involvement.  Pertinent excerpts from the phone calls include the following exchange:

> FEMALE:  . . . I was like, he might not even see the light of day if—if it really happened the way they say it happened, you know what I'm saying.  He's like, man I understand [inaudible].
>
> DEFENDANT: [crosstalk] rob me!
>
> FEMALE: Huh?
>
> DEFENDANT: They tried to rob me.  Don't say nothing else, don't say nothing to nobody.  I mean, I'm just letting you know, people think I—I just—he—n**** trying—n**** trying me.  But don't say nothing to nobody, you hear me?
>
> FEMALE: Yeah.
>
> DEFENDANT: N**** tried to rob me.  That's what they saying, they saying they was trying to rob me.  I don't know, you know, I'm just letting you know, they-they—
>
> FEMALE: Yeah, but that's-that's what everybody's saying.  That's what everybody's saying at the job.
>
> DEFENDANT: Oh, okay. Okay. All right.
>
> *****
>
> DEFENDANT:  . . . Just tell them you can't talk because I told you don't say nothing.  That's what you tell him.  He told me don't say nothing.
>
> *****
>
> DEFENDANT:  . . . But you ain't talked [crosstalk] you ain't—if somebody asked you, I just rolled by and gunshots

was fired and I kept going.  That's all you say.

FEMALE: All right.

We have reviewed Defendant's arguments and conclude that Defendant has failed to meet his burden of showing reversible error.

First, we consider whether the phone calls were relevant under Rule 401 of our Rules of Evidence, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  N.C. Gen. Stat. § 8C-1, Rule 401 (2023).  Our Supreme Court has instructed that this relevancy threshold is "relatively lax."  *State v. McElrath*, 322 N.C. 1, 13, 366 S.E.2d 442, 449 (1988).

Our Supreme Court has explained that we are to review a trial court's Rule 401 relevancy determination *de novo*.  *State v. Triplett*, 368 N.C. 172, 175, 775 S.E.2d 805, 807 (2015).  But, in the same paragraph of *Triplett*, our Supreme Court reiterates language from one of its prior opinions that the trial court's "rulings on relevancy are technically not discretionary, though we accord them great deference on appeal."  *Id.* (quoting *State v. Lane*, 365 N.C. 7, 27, 707 S.E.2d 210, 223 (2011)).

Here, even giving the trial court no deference on its ruling, we conclude that the phone calls were relevant.  In them, Defendant discusses the events surrounding the shooting and shows Defendant's excuse for shooting Mr. Morris (i.e., that he was being robbed).  His silence when told by the female caller that others in the

neighborhood were saying that he fired the fatal shot is some evidence of guilt. *See State v. Spaulding*, 288 N.C. 397, 406, 219 S.E.2d 178, 184 (1975), *vacated in part on other grounds, Spaulding v. North Carolina*, 428 U.S. 904 (1976).

Even though evidence may be relevant under Rule 401, that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403. We review the trial court's Rule 403 determination for abuse of discretion. *Triplett*, 368 N.C. at 175, 775 S.E.2d at 807.

We have reviewed the record and cannot say that the trial court abused its discretion in allowing the jailhouse phone calls into evidence.

Defendant contends that the calls were unduly prejudicial because of the hearsay statements by the female, especially those suggesting that the word on the street was that Defendant had fired the fatal shot. Here, though, the trial court provided a limiting instruction concerning the hearsay before the jury heard the calls:

> In the course of the recording that you are about to hear, you may hear statements attributed to third parties who are not testifying in this trial. Statements presented in the recordings that originated from non-testifying third parties are not to be considered by you for the truth of the matters asserted.

Defendant, though, contends that "the State's commingling of hearsay statements and the Defendant's silence rendered it impossible for the jurors to follow the court's limiting instruction."

We are persuaded by our Supreme Court's guidance that "[j]urors are presumed to follow the instructions given to them by the court." *State v. Parker*, 377 N.C. 466, 474, 858 S.E.2d 595, 600 (2021).

Defendant, though, further contests the State's characterization of his response and silence to the female caller as an "implied admission of guilt." However, Defendant's contention does not relate to the "hearsay" statements themselves, but rather to his response to those statements. And as any silence of Defendant was not in response to him invoking his Fifth Amendment right during an interrogation by a State actor, we conclude that there was no error in this regard. *See, e.g., State v. Etheridge*, 319 N.C. 34, 43, 352 S.E.2d 673, 679 (1987) ("[S]tatements made to private individuals unconnected with law enforcement are admissible so long as they were made freely and voluntarily."). And we again note our Supreme Court's holding in *Spaulding* regarding implied admissions based on silence:

> Implied admissions are received with great caution. However, if the statement is made in a person's presence by a person having firsthand knowledge under such circumstances that a denial would be naturally expected if the statement were untrue and it is shown that he was in position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission.

288 N.C. at 406, 219 S.E.2d at 184. *See also State v. Williams*, 333 N.C. 719, 726–27, 430 S.E.2d 888, 891–92 (1993) (recognizing that a defendant's implied admission through silence is an exception to the hearsay rule as an admission).

- 6 -

Next, Defendant contends the admission of the jail calls violated his constitutional rights to silence, due process, and a fair trial. U.S. Const. Amends. V, VI, XIV; NC Const. Art. I, §§ 19, 23. Because Defendant failed to repeat his objections, we review under the plain error standard of review. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). We have reviewed Defendant's argument and are not persuaded that Defendant has shown how his constitutional rights were violated by the introduction of the phone calls. Defendant's silence was not in response to questions by State actors. And the jury was free to make reasonable inferences from Defendant's statements and his silence.

## B. Alleged Prosecutorial Misconduct

Defendant's second argument concerns certain conduct by the State in withholding allegedly exculpatory information from him.

Specifically, months after Defendant's trial, the prosecutor's office informed Defendant's counsel that a law enforcement officer who testified at the trial was under investigation for embezzlement at the time of the trial. This officer provided testimony at Defendant's trial regarding the investigation by himself and his law enforcement colleagues. Defendant's counsel filed an MAR contending Defendant could have used information about the officer's embezzlement to impeach the officer's testimony. Our Court remanded the case to the trial court to conduct a hearing and make findings of fact. The trial court found that a former district attorney in the office knew of the investigation but that those working on Defendant's case in the

office only came to learn of the investigation after Defendant's trial. The trial court, however, denied the MAR.

It may be that under United States Supreme Court precedent the knowledge of the former district attorney was imputed on the office, including those working on Defendant's case within the office. However, we conclude that Defendant was not prejudiced by the failure to disclose the information about the officer. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) (noting that a new trial is warranted if the suppressed evidence was "material"); *see also State v. Berry*, 356 N.C. 490, 517, 573 S.E.2d 132, 149 (2002) ("Evidence is considered 'material' if there is a 'reasonable probability' of a different result had the evidence been disclosed.").

Specifically, we conclude that the testimony of the officer under investigation was particularly significant in proving Defendant's guilt. Evidence apart from the officer's testimony included: the jailhouse phone calls discussed *supra*; eyewitness testimony that the fatal shot came from within the Impala, that Defendant was driving the Impala, and that the Impala fled the scene immediately after the shooting; and an injury to Defendant's hand consistent with the recoil of a gun. The question, therefore, for the jury to resolve was whether it was Defendant who fired the fatal shot. Defendant does not point to any testimony from the officer which implicated Defendant specifically as the shooter. Rather, the officer testified that, though gun residue was found in the car, no gun residue was found on Defendant or his clothing.

We conclude that the other evidence was the evidence from which the jury relied to convict Defendant, most notably the jailhouse calls themselves. Aside from Defendant's silence to the female caller's statements that others were saying that he fired the fatal shot, Defendant himself made statements during the calls from which the jury could reasonably infer as an admission that he was the shooter. Indeed, rather than denying firing the fatal shot in response to the female's hearsay statements, he states that he was being robbed. The most reasonable inference from this statement is that Defendant was admitting to firing the shot but was offering an excuse for firing the shot.

We note Defendant's contest to certain findings by the trial court regarding the testifying officer and who within the district attorney's office knew what and when concerning the embezzlement investigation against that officer. However, based on our conclusion that the officer's testimony was not prejudicial anyway, we conclude that any error by the trial court in making these findings in its order denying Defendant's MAR was not prejudicial.

In conclusion, we find that Defendant received a fair trial, free of reversible error; and we affirm the trial court's denial of Defendant's MAR.

NO ERROR IN PART, AFFIRMED IN PART.

Judges COLLINS and STADING concur.