DECISION *Page 2 
{¶ 1} Defendant-appellant, Clarence Maddox, appeals the judgments of the Hamilton County Court of Common Pleas convicting him of six counts of rape. He was convicted after a jury trial.
 The Sexual Assaults {¶ 2} On December 3, 2004, Maddox was indicted on four counts of rape under R.C. 2907.02(A)(2) based on allegations that he had forcibly raped his daughter. Then, on October 17, 2006, he was indicted for four additional counts of rape based upon the same conduct, but alleging, under R.C. 2907.02(A)(1)(b), that he had engaged in sexual conduct with a person under 13 years of age. A trial on all counts was conducted in April 2007.
 {¶ 3} The victim in this case was born in 1996. In the summer of 2000, the victim's mother, Tammy Spikes, abandoned the victim at the doorstep of Maddox's mother. At the time the victim went to live with her grandmother, Maddox was imprisoned.
 {¶ 4} After Maddox was released from the penitientiary in January 2001, he had frequent contact with the victim at his mother's house. The victim testified that, shortly after Maddox's return, he had shown her pornographic movies and had put his penis in her mouth and on her "private parts."
 {¶ 5} After the victim had complained of vaginal soreness or irritation, her grandmother took her to be examined at Cincinnati Children's Hospital, where she was diagnosed with vaginal and anal chlamydia in June 2001. According to the victim, she had told her grandmother about the sexual abuse, but her grandmother *Page 3 
denied that she had done so. In any event, no charges were filed against Maddox at that time.
 {¶ 6} After Maddox's release from prison, Spikes resumed contact with the victim. In 2004, the victim informed Spikes that, during the previous summer, Maddox had taken her to his residence and had placed his penis in her mouth and had rubbed his penis on her private parts. Spikes took the victim to Cincinnati Children's Hospital, where the victim told hospital personnel and the police about the sexual abuse.
 {¶ 7} The state presented evidence that, between 2001 and 2004, Maddox had gone to the University of Cincinnati Hospital approximately 20 times complaining of symptoms consistent with sexually transmitted diseases. Though Maddox had been diagnosed with chlamydia only once — in July 2003 — the state's expert, Dr. Robert Shapiro, testified that it was common practice for hospitals to simply provide medication to treat sexually transmitted diseases rather than to expend the resources to test for their presence.
 {¶ 8} Shapiro also testified that the only means of transmitting vaginal and anal chlamydia, other than through childbirth, was through penetration. He indicated that, based upon the victim's statements, the prior diagnosis of chlamydia, and a 2004 physical examination of the victim that included reports of vaginal pain and difficulty urinating, there was evidence of sexual conduct.
 {¶ 9} Maddox took the stand in his own defense and denied any sexual conduct with the victim. The defense's theory was that Spikes had fabricated the allegations of sexual abuse to gain custody of the victim. According to Maddox's *Page 4 
trial testimony, the allegations were the product of an attempt by Spikes, the police, and the trial prosecutor to "blackmail" the victim.
 {¶ 10} In response to the allegations of improper influence on the victim, the state presented a videotaped statement that the victim had given in 2004. In the statement, the victim described the instances of sexual abuse that were the basis of the charges against Maddox.
 {¶ 11} The jury returned guilty verdicts on the counts in the indictments alleging vaginal rape in 2001 and 2003 and on the counts alleging fellatio in 2003. The jury returned not-guilty verdicts on the counts in the indictments alleging anal rape.
 {¶ 12} In the case numbered B-0609678, the trial court sentenced Maddox to three consecutive life terms of imprisonment. In the case numbered B-0409448, the court sentenced him to three ten-year terms of imprisonment, which were to be served consecutively, but which were otherwise made concurrent with the life sentences.
 Speedy Trial and Pre-Indictment Delay {¶ 13} In his first assignment of error, Maddox now argues that the trial court erred in overruling his motion to dismiss the charges brought in the 2006 indictment. He argues that the state had violated his right to a speedy trial in bringing the charges in the second indictment two years after the original indictment and three years after the last alleged incidents of sexual abuse.
 {¶ 14} While this appeal was pending, the Supreme Court of Ohio decided State v. Blackburn, [1] which is dispositive of this issue. InBlackburn, the state had *Page 5 
dismissed various weapons and drug charges against the defendant and had refiled different charges arising from the same conduct.[2] The trial court dismissed the refiled charges on the basis that the speedy-trial waivers from the previous proceedings did not apply to the new charges.[3]
 {¶ 15} The Ohio Supreme Court reversed the dismissal, holding that "[i]n calculating the time within which a criminal defendant must be brought to trial under R.C. 2945.71, periods of delay resulting from motions filed by the defendant in a previous case also apply in a subsequent case in which there are different charges based on the same underlying facts and circumstances as the previous case."[4]
 {¶ 16} In this case, there were numerous delays occasioned by Maddox before the issuance of the 2006 indictment, and there was no assertion that the speedy-trial time had expired with respect to the 2004 charges. Under Blackburn, the delays attributable to Maddox under the 2004 indictment applied also to the 2006 charges, and the later charges were therefore brought to trial within the deadline imposed by the speedy-trial statute.
 {¶ 17} But Maddox also claims that he was prejudiced by the period of pre-indictment delay as a result of the state's failure to bring the new charges until 2006. He argues that the state was aware of the victim's age at the time of the 2004 indictment and that it should have included the charges under R.C. 2907.02(A)(1)(b) at that time. The state agrees that the additional charges should have been brought in 2004, but it argues that Maddox was not prejudiced by the issuance of the new indictment. *Page 6 
 {¶ 18} We agree with the state that there was no prejudice. As the father of the victim, Maddox was aware of the victim's age, and there was no showing that his ability to defend against the charges was impeded by the new allegations. We overrule the first assignment of error.
 The Victim's Prior Consistent Statement {¶ 19} In his second assignment of error, Maddox argues that the trial court erred in admitting the victim's prior statement. He contends that the state failed to show that the previous statement was consistent with the victim's trial testimony or that there had been evidence of recent fabrication.
 {¶ 20} Evid. R. 801(D)(1)(b) provides that a prior statement is not hearsay if the witness is subject to cross-examination at trial and the prior statement is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * * ."
 {¶ 21} In the case at bar, the statement was properly admitted. Although the prior statement was arguably more detailed than the victim's trial testimony, Maddox failed to demonstrate any material inconsistency.
 {¶ 22} And the state was not required to show both improper motiveand recent fabrication: Evid. R. 801(D)(1)(b) provides for the admissibility of a prior consistent statement upon a showing of either circumstance.[5] Here, Maddox expressly accused Spikes, the police, and the prosecutor of improperly influencing the victim's testimony. Under Evid. R. 801(D)(1)(b), the statement was admissible for its truth, and there was no prejudicial error in the trial court's failure to excise *Page 7 
portions of the statement not directly related to the sexual assaults. We overrule the second assigment of error.
 Sufficiency and Weight of the Evidence {¶ 23} In Maddox's third assignment of error, he argues that the convictions were based on insufficient evidence and were against the manifest weight of the evidence.
 {¶ 24} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[7]
 {¶ 25} R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 26} Under R.C. 2907.01(A), sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus *Page 8 
between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 27} Maddox's convictions were in accordance with the evidence. The victim's testimony established that Maddox had placed his penis in her mouth and had rubbed his penis on her vagina. The diagnosis of the victim with chlamydia in 2001, coupled with Maddox's numerous treatments for sexually transmitted diseases, including chlamydia, indicated that vaginal penetration had occurred. With respect to the 2003 incidents, the victim's testimony, her statements to investigators and medical personnel, and the testimony of Dr. Shapiro supported the jury's finding of sexual conduct under R.C. 2907.01(A).
 {¶ 28} And while the victim did not testify that Maddox had used actual force to commit the assaults, such testimony was not necessary. "The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."[8]
 {¶ 29} Although Maddox had limited interaction with the victim during her young life, the evidence indicated that he nonetheless fulfilled the traditional paternal role of disciplinarian. The victim testified that, in situations other than the sexual abuse that is the subject of this appeal, Maddox had used corporal punishment and had otherwise exerted control over her behavior. The evidence was therefore sufficient to prove the element of force. *Page 9 
 {¶ 30} In arguing that the verdicts were against the weight of the evidence, Maddox points to certain inconsistencies in the victim's testimony about the time and place of the sexual assaults. He also notes the possibility that the victim could have contracted chlamydia from Spikes during childbirth. But these and other alleged shortcomings in the state's case were matters for the trier of fact to weigh, and we cannot say that the jury lost its way in finding Maddox guilty. The third assignment of error is overruled
 Sentencing {¶ 31} In his fourth assignment of error, Maddox contends that the trial court imposed improper sentences. He first argues that the court erred in retroactively applying State v. Foster, [9] in which the Supreme Court of Ohio held that a trial court may impose any sentence within the statutory range without making specific findings.[10] We have repeatedly rejected that argument.[11]
 {¶ 32} Maddox next argues that the trial court violated his double-jeopardy rights by imposing sentences for forcible rape and for rape of a person under 13 years old. This argument is without merit, as each offense required proof of an element that the other did not.[12]
The proof of force in a prosecution under R.C. 2907.02(A)(1)(b) can result in an enhanced sentence, [13] but force is not an element of the offense. *Page 10 
 {¶ 33} We also find no merit in Maddox's unsupported assertions that the sentences violated the doctrine of separation of powers and that they constituted cruel and unusual punishment. We overrule the fourth assignment of error.
 Sexual-Predator Adjudication {¶ 34} In the fifth and final assignment of error, Maddox argues that the trial court erred in adjudicating him a sexual predator. In making the determination whether the offender is likely to engage in future sexually oriented offenses, the trial court is to consider all relevant factors, including those enumerated in R.C. 2950.09(B)(3).[14] Where a sexual-predator determination is supported by some competent, credible evidence, it will not be reversed on the manifest weight of the evidence.[15]
 {¶ 35} Here, the evidence supported the adjudication. Maddox had begun a pattern of sexual abuse against his daughter when she was only four years old, and he had an atrocious criminal record that included six prior felony convictions. Although the Static-99 diagnostic test placed him at a low risk for reoffending, the state presented ample evidence to demonstrate that Maddox was a sexual predator. We overrule the fifth assignment of error.
 Conclusion {¶ 36} The judgments of the trial court are affirmed.
Judgments affirmed.
CUNNINGHAM and DINKELACKER, JJ., concur.
[1] 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319.
[2] Id. at ¶¶ 6-7.
[3] Id. at ¶ 8.
[4] Id., syllabus.
[5] State v. McClendon (Jan. 7, 1988), 8th Dist. No. 52635.
[6] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[7] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[8] State v. Eskridge (1988), 38 Ohio St.3d 56, 59, 526 N.E.2d 304, quoting State v. Etheridge (1987), 319 N.C. 34, 47, 352 S.E.2d 673.
[9] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[10] Id. at paragraph seven of the syllabus.
[11] See, e.g., State v. Bruce, 170 Ohio App.3d 92, 2007-Ohio-175,866 N.E.2d 44, ¶ 8.
[12] State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, paragraph one of the syllabus.
[13] R.C. 2907.02(B) and R.C. 2971.03. See, also, State v. Clark
(1995), 106 Ohio App.3d 426, 432, 666 N.E.2d 308.
[14] State v. Eppinger, 91 Ohio St.3d 158, 166, 2001-Ohio-247,743 N.E.2d 881.
[15] See State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202,865 N.E.2d 1264, syllabus. *Page 1