[Cite as *In re L.R.F.*, 2012-Ohio-4284.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97905**

---

# IN RE: L.R.F.
# A Minor Child

---

# JUDGMENT:
# REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-11111626

**BEFORE:** Celebrezze, P.J., Jones, J., and Cooney, J.

**RELEASED AND JOURNALIZED:** September 20, 2012

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
By:     Sheryl A. Trzaska
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    John D. Toth
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Appellant, L.R.F. (hereinafter, "appellant"), appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, adjudicating him delinquent for having committed the offense of rape. After careful review of the record and relevant case law, we reverse the judgment of the trial court and vacate the adjudication of delinquency in this case.

**{¶2}** On June 28, 2011, a complaint was filed in the Cuyahoga County Juvenile Court alleging that on October 9, 2007, appellant committed one count of rape by engaging in sexual conduct with minor child T.H. by force or threat of force, in violation of R.C. 2907.02(A)(2), a felony of the first degree if committed by an adult.

**{¶3}** Appellant proceeded to trial on September 21, 2011. At trial, the state produced victim T.H. as its sole witness. T.H. testified that at the time of trial, she was nine years old and in the fourth grade. She identified appellant as her maternal cousin. T.H. testified that when she was six years old, then-10-year-old appellant and his then-14-year-old brother witnessed her kiss another boy as part of a dare. She believed that she would get in trouble for kissing the boy.

**{¶4}** Approximately three weeks later, T.H. and appellant were at their grandmother's home in Cleveland, Ohio, when her grandmother asked her to turn off the television in the basement. T.H. testified that she asked appellant to come with her

downstairs because she "was afraid of the basement sometimes." Once downstairs, appellant told T.H. to "suck his area" or else he would tell their grandmother that T.H. kissed a boy while playing truth or dare. T.H. testified that she complied and that it lasted "a second, probably like three seconds."

{¶5} When questioned specifically about her interaction with appellant, T.H. testified that "it was like blackmailing." She explained that the blackmailing was that appellant "asked [her] to go down on him" or he would tell on her.

{¶6} T.H. stated that she initially did not tell anyone about the incident. However, approximately three years later, T.H told her mother about performing oral sex on appellant after her mother discovered a sexual text message on T.H.'s personal cell phone.

{¶7} At the close of the state's case, appellant unsuccessfully moved for dismissal under Juv.R. 29, arguing that the state did not present a prima facie case.

{¶8} Appellant testified on his own behalf. He testified that T.H. has a reputation for not telling the truth. He testified that he played with T.H. at their grandmother's house. He, however, was adamant that he did not assault T.H. at anytime.

{¶9} At the close of trial, the juvenile court adjudicated appellant delinquent of rape as charged. For disposition, the juvenile court committed appellant to the Department of Youth Services for a minimum period of one year.

{¶10} Appellant now brings this timely appeal, raising three assignments of error for review:

I. Insufficient evidence supported appellant's adjudication, and the trial court erred by denying his motion to dismiss charge.

II. Appellant's adjudication was against the manifest weight of the evidence.

III. The juvenile court abused its discretion when it ordered appellant committed to the Department of Youth Services.

Law and Analysis

I. Sufficiency of the Evidence

{¶11} In his first assignment of error, appellant argues that his adjudication was not supported by sufficient evidence and that the trial court erred in denying his motion to dismiss the charge pursuant to Juv.R. 29.

{¶12} When reviewing the sufficiency of the evidence in a juvenile context, we apply the same standard of review applicable to criminal convictions. *See In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). Our function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶13} In this case, appellant was found delinquent by reason of having committed rape, in violation of R.C. 2907.02(A)(2). To find appellant guilty of rape as alleged in

the complaint, the trier of fact was required to find that appellant engaged in sexual conduct with T.H. by purposely compelling her to submit by force or threat of force. R.C. 2907.02(A)(2).

{¶14} In challenging the sufficiency of the evidence supporting his delinquency adjudication, appellant contends that the state failed to present sufficient evidence that he purposefully compelled T.H. to submit by force or threat of force.

{¶15} "Force" is generally defined by statute as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2929.01(A)(1). However, despite the general definition of force, Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit "by force or threat of force" depends on the victim's and offender's relationship.

{¶16} In 1921, the Ohio Supreme Court, in *State v. Labus,* interpreted the element of force in the rape statute when the victim was the offender's daughter, who was under the age of 12. 102 Ohio St. 26, 38-39, 130 N.E. 161 (1921). Section 12413 of the General Code then provided that "[w]hoever has carnal knowledge of his daughter, sister, or a female person under twelve years of age, forcibly and against her will, shall be imprisoned in the penitentiary during life * * *." *Id.* at 27. The *Labus* court recognized that "[t]he force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other * * *." *Id.* at 39. The court reasoned that, "[w]ith the filial obligation of obedience to the parent, the

same degree of force and violence would not be required upon a person of such tender years as would be required were the parties more nearly equal in age, size, and strength." *Id.* In light of the "threats, fright, intimidation and the like, coupled with the unnatural and atrocious act," the *Labus* court ultimately concluded that the state overwhelmingly proved force and sustained the rape conviction. *Id.*

{¶17} In 1988, the court in *State v. Eskridge* interpreted the element of force in the rape statute where the victim was the offender's four-year-old daughter. 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). At that time, R.C. 2907.02(B) provided: "[i]f the offender * * * purposely compels the victim to submit by force or threat of force, whoever violates division (A)(3) of this section shall be imprisoned for life." *Id.* at 57. Relying on its earlier decision in *Labus*, the *Eskridge* court observed "the coercion inherent in parental authority when a father sexually abuses his child" and found that "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *Id.* at 58.

{¶18} According to the court, "[t]he youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *Id.* at 59, citing *State v. Etheridge*, 319 N.C. 34, 47, 352 S.E.2d 673 (1987). The court thereafter stated that the forcible element of rape can be established "[a]s long as it can be shown that the rape victim's will was overcome by fear or duress." *Id.*, citing *State v. Martin*, 77 Ohio App. 553, 68 N.E.2d 807 (9th Dist.1946), and *State v. Wolfenberger*, 106 Ohio App. 322, 154 N.E.2d 774 (12th Dist.1958). The

court concluded that the state presented sufficient evidence of force given the size and age disparities of the offender and the victim, the inherent coercion of the offender's parental authority, and the victim's repulsion to the acts themselves. *Id*. at 58-59.

{¶19} In 1992, the court in *State v. Schaim* again interpreted the element of force for purposes of rape in violation of R.C. 2907.02(A)(2), where the victim was the offender's 20-year-old daughter. 65 Ohio St.3d 51, 52, 1992-Ohio-31, 600 N.E.2d 661. R.C. 2907.02(A)(2) prohibited sexual conduct where the offender "purposely compels the other person to submit by force or threat of force." *Id*. at 54. The evidence presented demonstrated that the father began sexually abusing his daughter when she was 10 or 11 years old and continued to sexually abuse her into her twenties. *Id*. at 52. The father was convicted of two counts of forcible rape for twice having vaginal sex with his daughter when she was 20 years old. *Id*. The appeals court reversed the rape convictions finding that the state failed to produce sufficient evidence on the element of force. *Id*. at 53.

{¶20} On appeal to the Ohio Supreme Court, the state, relying on *Eskridge*, argued that the father's pattern of sexually abusing his daughter was sufficient to demonstrate force. *Id*. at 54. The Ohio Supreme Court disagreed that *Eskridge* applied because *Eskridge* was "based solely on the recognition of the amount of control that parents have over their children, particularly young children." *Id*. at 55. According to the court, a woman over the age of majority is not compelled to submit to her father in the same manner as is a four-year-old girl. She is no longer completely dependent on her parents

and is more nearly their equal in size, strength, and mental resources. *Id.* Thereafter, the court concluded that the element of force can be established "if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *Id.* Because the state failed to produce such evidence — or even evidence that the offender used or threatened to use physical force during the uncharged sexual offenses from which an inference of force or threat of force for the charged offenses could arise — the court determined that the record contained insufficient evidence of force to sustain the rape conviction. *Id.*

{¶21} In 1988, the court again interpreted the element of force in the rape statute where the victim was the nine-year-old son of the adult offender's female friend. *State v. Dye,* 82 Ohio St.3d 323, 1998-Ohio-234, 695 N.E.2d 763. The court determined that *Eskridge* applied even though the defendant was not the victim's father because *Eskridge* did not strictly depend on the parental relationship between the offender and the victim, but rather the offender's position of authority over the victim. *Id.* at 328. Therefore, the court in *Dye* held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." *Id.* at 329. Consequently, the court determined that the state presented sufficient evidence of force given the age and size disparity between the victim and the offender, the psychological force, and the offender's position of authority over the child-victim. *Id.* at 328-329.

**{¶22}** In the case at hand, the state maintains that the definitions of force developed by the Ohio Supreme Court in *Eskridge* and *Dye* are applicable in this matter. Thus, the state asks this court to apply a "more relaxed" definition of force that includes "subtle and psychological" force. However, unlike the factual scenarios discussed in *Eskridge* and *Dye*, we are presented with the unusual case where the victim and the offender were each under the age of 13 at the time of the incident. Based on these factual distinctions, we decline to utilize the fact-specific definitions of force applicable in *Eskridge* and *Dye*. As such, we conclude that "subtle and psychological" force found sufficient in *Eskridge* and *Dye* are not present here. This is not a case involving a parent-child relationship where the filial obligation of obedience to a parent is at issue, nor is there evidence to suggest that appellant was in a position of authority over T.H.

**{¶23}** Accordingly, our analysis focuses on whether, as a general rule of law, the state proved beyond a reasonable doubt that appellant, through the use of force or threat of force, caused the will of T.H. to be overcome by fear or duress.

**{¶24}** Absent the coercive effect of filial obligation, a defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant (1) uses physical force against that person or (2) creates the belief that physical force will be used if the victim does not submit. *Schaim,* 65 Ohio St.3d at 54-55, 1992-Ohio-31, 600 N.E.2d 661. A threat of force can be inferred from the circumstances surrounding the sexual conduct. *Id.*

**{¶25}** On review of the record, we are unable to conclude that the state presented sufficient evidence of force or threat of force as required under R.C. 2907.02(A)(2). At trial, the state only presented the testimony of T.H., who testified that she performed fellatio on appellant after appellant threatened to tell her grandmother that she had kissed another boy.

**{¶26}** In light of T.H.'s testimony, we find that the state failed to present sufficient evidence that appellant used physical force or threat of force to compel T.H. to submit to sexual conduct. This is not a case where the defendant forcefully compelled the victim to perform the act of fellatio by pushing her head down. *See In re N.K.*, 8th Dist. No. 82332, 2003-Ohio-7059. Similarly, this is not a case where the defendant forcefully held down the victim as he engaged in sexual conduct. *See In re D.L.*, 3d Dist. No. 3-11-08, 2012-Ohio-1796, ¶ 27. Rather, T.H. described appellant as "asking" her to "go down on him," and there is no testimony that indicates that appellant physically forced or threatened to physically force T.H. to submit in any way. Without more, such evidence does not warrant a delinquency adjudication for rape.

**{¶27}** Furthermore, the state also failed to produce sufficient evidence that appellant created the belief that physical force would be used if T.H. did not submit to the sexual conduct. Significantly, there is nothing in T.H.'s testimony to suggest that she feared appellant would exert physical force if she did not comply with his request. Based on T.H.'s testimony, it is evident that she submitted to the sexual conduct based on what she considered to be a form of "blackmail." While we recognize that the threat of

"getting in trouble" with a parental figure may be significant to a young child, such a threat does not equate to force or threat of force. As this court has stated, "the threat of ostracism does not neatly qualify as a threat of force because it is not a physical compulsion * * *." *See In re N.K.* at ¶ 17.[1]

{¶28} Based on the foregoing, we find insufficient evidence to establish that appellant purposely compelled T.H. to submit to the sexual conduct by force or threat of force.

{¶29} Appellant's first assignment of error is sustained. We further find appellant's remaining assignments of error to be moot.

{¶30} Judgment reversed and case remanded to the trial court to vacate the delinquency adjudication.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[1] The committee note to R.C. 2901.01(A), while not rising to the dignity of law, provides greater insight into what constitutes "force":

"'Force' is defined to include all kinds of force which may be exerted physically against a person or thing, but to exclude coercive acts sometimes loosely called force, such as the compulsion exerted by blackmail through fear of exposure."

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
COLLEEN CONWAY COONEY, J., CONCUR