[Cite as *In re C.S.*, 2024-Ohio-1063.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE C.S.

A Minor Child

:
:
:
:

No. 112823

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-22108142

---

### *Appearances:*

Friedman, Gilbert + Gerhardstein and Marcus S. Sidoti, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jacob Westfall, Assistant Prosecuting Attorney, *for appellee*.

LISA B. FORBES, J.:

{¶ 1} Appellant C.S. appeals from the juvenile court's journal entry adjudicating him delinquent of rape, gross sexual imposition, and disseminating matter harmful to juveniles. After reviewing the facts of the case and the pertinent law, we affirm the juvenile court's decision.

## I.  Facts and Procedural History

{¶ 2}   On August 12, 2022, a complaint was filed alleging that C.S. was delinquent of four counts of rape, two counts of attempted rape, six counts of gross sexual imposition, and one count of disseminating matter harmful to juveniles.  The complaint alleged that C.S. engaged in sexual contact and conduct with A.B. between January 1, 2020, and December 31, 2020.

{¶ 3}   Following a bench trial, C.S. was adjudicated delinquent of the following:

Rape in violation of R.C. 2907.02(A)(1)(b) which specified that C.S. engaged in sexual conduct, to wit cunnilingus with A.B. who at the time was less than thirteen years of age;

Rape in violation of R.C. 2907.02(A)(1)(b) which specified that C.S. engaged in sexual conduct, to wit fellatio, with A.B.  who at the time was less than thirteen years of age;

Rape in violation of R.C. 2907.02(A)(2) which specified that C.S., by force or threat of force, engaged in sexual conduct, to wit fellatio, with A.B.;

Gross sexual imposition in violation of R.C. 2907.05(A)(4) which specified that C.S. engaged in sexual contact, to wit touched breasts with A.B. who at the time was less than thirteen years of age;

Gross sexual imposition in violation of R.C. 2907.05(A)(4) which specified that C.S. engaged in sexual contact, to wit touch penis with hand with A.B. who at the time was less than thirteen years of age;

Disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1) which specified that he recklessly sold, delivered, furnished, disseminated, provided, exhibited, rented, or presented to A.B. material or performance that was obscene.

The juvenile court committed C.S. to the custody of the Ohio Department of Youth Services for an indefinite term consisting of a minimum period of 12 months and a maximum period not to exceed his attainment of the age of 21 years old.

{¶ 4} It is from this order that C.S. appeals, raising the following two assignments of error:

> I. The trial court erred as a matter of law in finding the appellant delinquent when there was not sufficient evidence to support the convictions and erred when it denied appellant's motion for acquittal under Crim.R. 29.

> II. The manifest weight of the evidence did not support the convictions.

## II. Trial Testimony

{¶ 5} C.S. and A.B. are brother and sister; they lived with their grandmother, Jacqueline Bammerlin ("Bammerlin"). According to A.B., sexual contact and conduct with C.S. occurred "[i]n the summertime." More specifically, A.B. recalled that, "[i]t was the summer when I was eight, so probably 2020." At trial, the parties stipulated to A.B.'s date of birth as April 21, 2012.

{¶ 6} Describing how the sexual contact and conduct began, A.B. testified, "So we started playing video games and then he started to talk me into doing some other things. * * * He showed me a video. He said this is what brothers and sisters do." A.B. described the video as follows: "So the woman sucked his private part and then he licked hers." These events took place in C.S.'s room with the door open a crack or closed.

{¶ 7} A.B. recalled that C.S. had "touched" her, "licked [her] private part," and "sucked [her] boobs." Asked whether she ever touched C.S., A.B. responded,

"[s]ometimes" and that she "rubbed his private part." A.B. testified that the sexual conduct occurred more than once but she could not recall how many times. A.B. stated that at the end of the summer, she told C.S. to stop "because at that point, [she] knew it was wrong."

{¶ 8} A.B. notified Bammerlin about the sexual contact and conduct with C.S. sometime during the week of August 12, 2022, after A.B. saw a T.V. show that portrayed a student reporting an inappropriate sexual encounter with her piano teacher. A.B. explained that watching the T.V. show "helped me try to tell my grandma, but I was really scared then, so I just ended up telling her." She did not tell Bammerlin earlier because A.B. "was scared she would punish" her.

{¶ 9} After A.B. told Bammerlin about the sexual contact and conduct, Bammerlin took her to the police station to make a report. Both Bammerlin and A.B. prepared written statements that were admitted into evidence at trial.

{¶ 10} A.B.'s statement reads, in its entirety:

[C.S.] (my brother) sucked my boobs, Licked my private, made me suck his private twice, made me Rubb his private, tried to put his private in my Butthole. he made me suck his d**k one day then a couple weeks Later.

(Quote sic.)

{¶ 11} Bammerlin's statement includes the following:

I was watching a show where a woman was sexually abused by her piano teacher and [A.B.] came into the room and heard her talking about it to her sister on the show. I asked [A.B.] if she understood what she just saw. I told her that the woman's teacher when she was young did things to her he shouldn't have done like touching her when she didn't want him to inappropriately. I told her you cannot let anyone

touch you if you don't want them too. You cannot be afraid to tell if it happens and you won't get in trouble for telling. She then came over to me and said that her brother, [C.S.], had touched her and had her touch him. She said he sucked on her breasts. He licked her private parts, made her rub his penis, and asked her to suck his penis. He told her it was all okay because brothers and sisters always did these things to each other. She said he showed her a dirty movie where people were doing these things to each other. She said he also was going to stick his penis in her butt, but she wouldn't let him. * * *.

(Quote sic.)

{¶ 12} After Bammerlin and A.B. made their reports, the case was assigned to Detective Andrew Sperie ("Det. Sperie"). Det. Sperie testified that the case entailed "an allegation by [C.S.'s] younger sister that a few years prior when she was eight or nine that * * * he had forced himself upon her, had her perform oral sex on him * * * and also there was some pornographic video shared."

## III. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 13} "When reviewing the sufficiency of the evidence in a juvenile context, we apply the same standard of review applicable to criminal convictions." *In re L.R.F.*, 2012-Ohio-4284, 977 N.E.2d 138, ¶ 12 (8th Dist.), citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) (Cook, J., concurring). "In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution." *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 11.

{¶ 14} We note under his sufficiency assignment of error, C.S. argues that the victim's "testimony is inconsistent * * *" and thus his convictions are not supported by sufficient evidence. This argument is misplaced. Any argument regarding inconsistencies in a witness's testimony relates to the witness's credibility and the weight to be given that evidence. *See State v. B.C.*, 8th Dist. Cuyahoga No. 110070, 2021-Ohio-2682, ¶ 21, citing *Thompkins* at 390 ("In the simplest sense, the difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion."). Therefore, these arguments will not be addressed here. C.S.'s manifest-weight challenge is addressed below.

{¶ 15} C.S. challenged the sufficiency of the evidence to support his adjudications for rape based on fellatio with a person under the age of 13 and fellatio through force or threat of force.[1] These adjudications of rape were pursuant to R.C. 2907.02(A), which provides, in pertinent part:

---

[1] C.S. does not challenge his adjudication regarding cunnilingus with a person under the age of 13 years.

(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * *:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

We find that the state presented sufficient evidence regarding each of the challenged charges.

### 1. Fellatio

{¶ 16} C.S. claims that at trial A.B. "never once testified or insinuated that any part of her mouth touched [C.S.'s] penis." Therefore, the counts of rape specifying fellatio were not supported by sufficient evidence.

{¶ 17} While the record reveals that A.B. did not testify regarding the fellatio, her written police statement was admitted into evidence. In that statement, A.B. asserted that C.S. "made me suck his private twice * * * he made me suck his d**k one day then a couple weeks later."

{¶ 18} We find that A.B.'s written statement is sufficient, if believed, to establish sexual conduct, specifically fellatio, addressed in R.C. 2907.02(A). The term "sexual conduct" as used in R.C. 2907.02(A) is defined to include fellatio. R.C. 2907.01(A).

{¶ 19} It was undisputed that A.B. was 8 years old at the time. Consequently, the state presented sufficient evidence to support C.S.'s adjudication of rape based on fellatio with a person under the age of 13 years.

## 2. Force or Threat of Force

{¶ 20} Further, C.S. argues that there was no testimony regarding "any force or threat of force [that] was used" against A.B. In opposition to C.S.'s Crim.R. 29 motion to dismiss for insufficient evidence of force, the state argued that there was "an implied threat of force * * * in that [A.B. is] much younger, she's much smaller, this took place in a room that was — at least the door was mostly closed when it occurred, they were secluded, et cetera."

{¶ 21} The Ohio Supreme Court has held that "[t]he force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and the relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus. The court explained that "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Id*. at 58-59, citing *State v. Martin*, 77 Ohio App. 553, 68 N.E.2d 807 (9th Dist.1946); *State v. Wolfenberger*, 106 Ohio App. 322, 154 N.E.2d 774 (12th Dist.1958). In *Eskridge,* a father was convicted of raping his four-year-old child while he was watching the child. The court noted that the father "held a position of authority over [the victim,] which did not require any explicit threats or displays of force." *Id*. at ¶ 59.

{¶ 22} The law regarding what evidence of force is required was further developed in *State v. Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763 (1998), where the Supreme Court of Ohio applied *Eskridge* to a rape case in which the offender was

not the victim's parent. The Ohio Supreme Court held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." *Id*. at 329.

{¶ 23} In the case at hand, evidence in the record, if believed, supports C.S.'s adjudication for forcible rape. The record established that the sexual contact and conduct occurred in the summer of 2020 when A.B. was 8 years old. C.S.'s date of birth is September 14, 2004, meaning he was 15 years old at the time of the sexual conduct. A.B.'s written statement to police demonstrates that C.S. "made" her perform fellatio on him. According to Det. Sperie, A.B. told police that C.S. "had forced himself upon her" and "had her perform oral sex on him * * *."

{¶ 24} After reviewing the evidence in the light most favorable to the state, we find that A.B.'s statement, as an eight-year-old girl, that her 15-year-old brother "made" her perform oral sex on him is sufficient, if believed, to satisfy the force element. *See State v. Skeins*, 11th Dist. Trumbull Nos. 2017-T-0018, 2018-Ohio-134, ¶ 46 (finding that a young victim's statement that the defendant "made" her perform a sex act established force required for a forcible rape conviction.).

{¶ 25} C.S.'s first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 26} A challenge to the manifest weight of the evidence "addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v.*

*Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Reversing a conviction under a manifest-weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 215, 485 N.E.2d 717 (1st Dist.1983).

{¶ 27} In his second assignment of error, C.S. argues that his delinquency adjudications are against the manifest weight of the evidence for the following reasons: the victim

> reported the alleged incidents more than two years after they supposedly took place. There was no tangible evidence presented to back up the claims. [A.B.'s] account was inconsistent, and her description of the events was vague, especially concerning their timing, frequency, and her evolving feelings about them.

We find these arguments not well taken.

{¶ 28} It is true that two years passed between the sexual acts and conduct occurring and A.B. reporting them. However, A.B. testified that the reason she did not report sooner was because she was afraid that she would be punished. Further, she stated that seeing the TV show aided her in notifying Bammerlin regarding what happened, indicating that she was unsure how to approach anyone beforehand. Bammerlin's account of when and why A.B. came forward was consistent with A.B.'s

account. The juvenile court was within its authority to determine whether it believed A.B.'s testimony regarding her fear of coming forward. The juvenile court, as the factfinder, was "in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms, in order to determine the credibility of each witness." *State v. Dowd*, 8th Dist. Cuyahoga No. 80990, 2002-Ohio-7061, ¶ 23. As such, the court was "free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Williams*, 2019-Ohio-794, 132 N.E.3d. 1233, ¶28 (8th Dist.). Based on the record before us, the juvenile court did not clearly lose its way in believing A.B. notwithstanding her delay in reporting the sexual acts and conduct.

{¶ 29} C.S. also argues that his adjudications are against the manifest weight of the evidence because no physical evidence was introduced. There is no requirement that physical evidence be introduced in order to sustain a conviction or adjudication. *See State v. Blankenship*, 8th Dist. Cuyahoga No. 77900, 2001 Ohio App. LEXIS 5520 (Dec. 13, 2001) (finding that a rape victim's "testimony, if believed, is sufficient to prove each element of the offense * * *. There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction."). Accordingly, we find this argument unavailing.

{¶ 30} Finally, C.S. argues that A.B.'s testimony regarding the incident was inconsistent and vague, and this warrants reversal. We disagree. A.B., a ten-year-old girl at the time of trial, testified with specificity regarding the video C.S. showed her and that C.S. "licked [her] private part," "sucked [her] boobs," and that she "rubbed his private part." Further, she was not inconsistent regarding when the

sexual conduct and contact occurred. A.B. testified that "it was the summer when [she] was eight, so probably 2020." As noted above, while A.B. did not testify regarding the fellatio, her testimony was supplemented by the written report that was admitted into evidence. The written report specifically stated that C.S. "made [her] suck his private twice * * * he made [her] suck his d**k one day then a couple weeks [l]ater."

{¶ 31} The juvenile court judge presided over the trial and was in a position to assess whether the inconsistency regarding A.B.'s testimony and her written statement diminished A.B.'s credibility. This court has consistently held that

> when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witness's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible.

*State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42. Because we do not find that this case is an "exceptional case in which the evidence weighs heavily against the conviction," we reject C.S.'s third argument.

{¶ 32} C.S.'s second assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR